UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JESSICA SMITH, ET AL.,**

Plaintiffs,

v. **No. 4:24-cv-00334-P**

**UNITED STATES OF AMERICA, ET AL.,**

Defendants.

## OPINION & ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion"). ECF No. 47. Plaintiffs in this case are individuals who allege they suffered serious harm from receiving COVID-19 vaccines. Congress granted the manufacturers of those vaccines near-total immunity from suit and channeled any claims of injury into a federal compensation program. Unable to sue the vaccine manufacturers, Plaintiffs sued the United States and various federal officials, claiming that this legal scheme violates their constitutional rights.

But this Court is one of limited jurisdiction. It may only proceed over a lawsuit when plaintiffs show a plausible basis for standing to sue. Plaintiffs' First Amended Complaint fails to request relief that would redress their injuries. Having considered the record, the Parties' briefing, and the applicable law, the Court will **GRANT** Defendants' Motion.

## BACKGROUND

### A. The PREP Act and the Countermeasures Injury Compensation Program

In 2005, Congress enacted the Public Readiness and Emergency Preparedness Act ("PREP Act"). ECF No. 48 at 3; 42 U.S.C. §§ 247d-6d, 247d-6e. The PREP Act does two important things relevant to this case.

*First*, the PREP Act grants near-total civil immunity to the manufacturers of "countermeasures" to declared public health emergencies. When the Secretary of Health and Human Services declares that a disease or other threat poses a public health emergency, they may designate any drugs, products, or devices designed to target the threat as "covered countermeasures." 42 U.S.C. §§ 247d-6d(b), 247d-6d(i)(1). The manufacturers of those countermeasures then become "immune from suit and liability" for nearly all claims of harm or death arising from the countermeasure's use. *Id.* § 247d-6d(a). The "sole exception" to this immunity is when the manufacturer seriously injures or kills someone through willful misconduct. *Id.* § 247d-6d(d)(1). The PREP Act's grant of immunity lasts as long as the Secretary determines it should, *id.* § 247d-6d(b)(2)(B), and federal courts have no jurisdiction to review the Secretary's declarations of covered countermeasures. *Id.* § 247d-6d(b)(7).

On January 31, 2020, the Secretary of Health and Human Services declared that the COVID-19 pandemic constituted a public health emergency. ECF No. 36 at ¶ 3. The Secretary further declared that any vaccine used to treat or prevent COVID-19 constituted a "covered countermeasure" under the PREP Act. ECF No. 36 at ¶ 3; *Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19*, 85 Fed. Reg. 15,198 (March 17, 2020). As a result, for as long as the Secretary's declaration remains in effect, the manufacturers of COVID-19 vaccines are immune from most legal claims for injury arising from use of their vaccines.

*Second*, as an alternative to lawsuits against countermeasure manufacturers, the PREP Act authorizes the Countermeasures Injury Compensation Program ("CICP"). A person who claims they have been seriously injured from using a covered countermeasure may file a claim for compensation from the federal government. ECF No. 48 at 4; *see* 42 U.S.C. § 247d-6e (authorizing CICP). Officials within the Department of Health and Human Services ("HHS") administer CICP. The PREP Act charges the Secretary of Health and Human Services with determining which injuries may be compensated for. *Id.* § 247d-6e(b)(4). Those

determinations must be based on "compelling, reliable, valid, medical and scientific evidence." *Id.*

A person seeking compensation must generally file their claim with CICP within one year of using the countermeasure—in this case, a vaccine. 42 C.F.R. § 110.42(a). They must support their claim with medical records and other documentation showing their eligibility for compensation. *Id.* §§ 110.50–51. The claimant's participation in the process more or less ends upon submitting their claim. After receiving a claim, HHS staff determines whether the claimant is eligible for compensation, and if so, in what amount. *Id.* § 110.70. The Secretary of Health and Human Services then notifies the claimant of their decision in writing. *Id.* §§ 110.73–74. HHS has approved exceedingly few claims related to COVID-19 countermeasures. From late 2020 through September 1, 2026, less than 2% of claimants were found eligible for compensation. Health Resources & Services Administration, *CICP data for COVID-19 claims (as of September 1, 2026)*, https://www.hrsa.gov/cicp/cicp-data [https://perma.cc/5LSG-RX2X].

Within 60 days of receiving a decision, a claimant may seek reconsideration. 42 C.F.R. § 110.90(a). Reconsideration requests are evaluated by a panel of people independent from CICP who conduct their own review of the claimant's submission. *Id.* § 110.90(c). That panel makes a recommendation to an official within the Health Resources & Services Administration, a component of HHS, who then makes their own determination. *Id.* That last determination is final. The claimant may not seek any further administrative or judicial review of the decision. *Id.*

**B. This Lawsuit**

Plaintiffs are four individuals who allege they or their minor children were harmed from receiving a COVID-19 vaccine. Dr. Joel Wallskog applied for compensation through CICP, but was denied 19 months later. His request for reconsideration was denied after another 17 months. ECF No. 36 at ¶¶ 69–72. Jessica Smith and Theodore Cabaniss, on behalf of his minor child, both applied for compensation through CICP. As of Plaintiffs' First Amended Complaint, however, neither have

received a decision—for Smith, after three years of waiting, and for Cabaniss, after four years of waiting. ECF No. 36 at ¶¶ 52, 85. Dr. Elizabeth Thiele has not applied for compensation through CICP as she was unaware of the program's existence until after the one-year deadline to file a claim passed. ECF No. 36 at ¶ 104.

Plaintiffs filed their original complaint in this case on April 18, 2024. ECF No. 1. That complaint alleged that the PREP Act in its entirety violated various constitutional provisions and asked the Court for declaratory judgments holding so. ECF No. 1 at 33–52. Plaintiffs named as Defendants the United States and the federal agencies and officials charged with administering both the PREP Act and CICP.

In June of 2024, Defendants moved to stay this case pending the resolution of a motion to dismiss in a near-identical case filed before the Western District of Louisiana. ECF No. 18. Represented by much of the same counsel, the plaintiffs' complaint in the companion case raised the same issues and sought the same forms of relief as the original complaint here. To promote judicial efficiency—and to guide the Court's decision here—this Court granted Defendants' motion to stay. ECF No. 22.

**C. *Smith I***

On September 30, 2025, the Western District of Louisiana granted the government's motion to dismiss in the companion case. *Smith v. US Health Res. & Servs. Admin.*, No. CV 23-1425, 2025 WL 3124848 (W.D. La. Sept. 30, 2025) ("*Smith I*"). The court in *Smith I* held that the plaintiffs had failed to plead a plausible basis for standing. *Id.* at *4–6. To survive a motion to dismiss for lack of standing, a plaintiff must show that their alleged injury "would likely be redressed by judicial relief." *Id.* at *4 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). As in this case, Plaintiffs' complaint sought declaratory judgments that the PREP Act violated the Constitution as applied to them.

According to the court, the requested relief was "unlikely to redress Plaintiffs' injuries." *Smith I*, 2025 WL 3124848 at * 5. Declaratory relief that the PREP Act was unconstitutional would resolve the legal rights of the parties to the case—namely, plaintiffs and the federal government

defendants. *Id.* But it would have no effect on non-parties outside of the litigation. That included the manufacturers of COVID-19 vaccines, who, regardless of any declaratory judgment issued by the court, would remain free to invoke PREP Act immunity in any case plaintiffs filed against them. *Id.* at *5–6. That fact rendered the judgment plaintiffs sought "little more than an advisory opinion." *Id.* at *5 (citation omitted).

In light of *Smith I*, this Court lifted the stay in this case and granted Plaintiffs leave to file an amended complaint. ECF No. 35.

**D. The First Amended Complaint**

On March 25, 2026, Plaintiffs filed their First Amended Complaint. ECF No. 36. The Amended Complaint changed the claims asserted by Plaintiffs and the forms and scope of relief they requested. Plaintiffs now allege that (1) CICP violates their Fifth Amendment right to procedural due process because it fails to provide a meaningful opportunity to be heard, an impartial decisionmaker, timely resolution of their claims, or the ability to seek judicial review (ECF No. 36 at ¶¶ 151–183); (2) CICP violates their Fifth Amendment right to substantive due process because it arbitrarily deprives them of their common law right to sue vaccine manufacturers in tort (ECF No. 36 at ¶¶ 184–195); and (3) the PREP Act violates their Seventh Amendment right to a trial by jury because it fails to provide for a jury trial through CICP, which replaced tort suits against vaccine manufacturers (ECF No. 36 at ¶¶ 196–208).

To remedy those constitutional deprivations, the First Amended Complaint seeks the following relief: (1) a declaration that CICP "is unconstitutional and unlawful under the Fifth and Seventh Amendments as currently administered"; (2) a permanent injunction prohibiting Defendants from "implementing, enforcing, or administrating CICP as it is inconsistent with Fifth Amendment due process and Seventh Amendment right to trial by jury"; and (3) a declaration that the statute of limitations for Plaintiffs' "state and common law claims" are "equitably tolled from the date of the onset of their injuries" and that Plaintiffs may "pursue their state and common law claims in a court of competent jurisdiction." ECF No. 36 at 55.

On May 19, Defendants moved to dismiss the First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 47. Defendants argue that Plaintiffs lack standing and fail to state a claim upon which relief can be granted. ECF No. 48 at 12–37. Because the first issue is dispositive, the Court proceeds to determine whether Plaintiffs have standing to maintain this lawsuit.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when a district court lacks subject matter jurisdiction over a case. "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). On a Rule 12(b)(1) motion to dismiss, the party asserting jurisdiction bears the burden to prove that jurisdiction "does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

## ANALYSIS

When a defendant moves to dismiss for lack of jurisdiction in conjunction with other Rule 12 motions, the Court should consider the jurisdictional argument first. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citation omitted). Defendants argue that Plaintiffs lack standing and, as a result, this Court lacks subject matter jurisdiction. The Court addresses that threshold issue upfront.[1]

---

[1] Under recent Supreme Court precedent, determining whether a party has standing to bring a lawsuit can be a very treacherous undertaking for district court judges, comparable to exploring uncharted territory without a compass. *See, e.g.*, *Haaland v. Brackeen*, 599 U.S. 255 (2023) (holding that a state lacks standing to challenge federal law preempting state laws on foster child placement, even though "Congress's Article I powers rarely touch state family law"); *contra Massachusetts v. EPA*, 549 U.S. 497 (2007) (holding that a state had standing to challenge the EPA's decision not to regulate emissions of greenhouse gases because that power was preempted and greenhouse gases affected "the earth and air within its domain"); *contra United States v. Texas*, 599 U.S. 670 (2023) (holding that states near an international border lacked standing to challenge the federal government's immigration enforcement policies because the state's financial injury was not "legally cognizable"); *but see Biden v. Nebraska*, 600 U.S. 477 (2023) (holding that Missouri established standing by showing that it suffered a concrete injury "to a legally protected

### A. Plaintiffs fail to plead a plausible basis for standing.

Article III of the United States Constitution limits the power of this Court to "cases" and "controversies." U.S. CONST. art. III, § 2. A case or controversy only exists if a plaintiff has standing to sue. *United States v. Texas*, 599 U.S. 670, 675 (2023). Standing to sue under Article III requires (1) an injury in fact, or the "invasion of a legally protected interest that is concrete and particularized and actual or imminent"; (2) traceability, or a causal connection showing the injury is "fairly traceable to the challenged conduct"; and (3) redressability, or that the injury will "likely be redressed by a favorable decision" from the Court. *Vapor Tech. Ass'n v. Graham*, 167 F.4th 302, 305 (5th Cir. 2026) (cleaned up) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To survive a motion to dismiss, a complaint must allege facts that "give rise to a plausible claim of [plaintiff's] standing." *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009) (citation omitted). And a plaintiff must demonstrate his standing "for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 434 (2017) (citation omitted).

Here, Defendants do not argue that Plaintiffs' Amended Complaint fails to satisfy the first two requirements of standing: injury in fact and traceability. They only argue that "Plaintiffs fail to show that the relief sought would redress their injuries." ECF No. 48 at 13. The Court agrees that the First Amended Complaint fails to request relief that will "likely" redress Plaintiffs' alleged injuries. *Lujan*, 504 U.S. at 561. And because failure to show one requirement of standing means failure to show standing altogether, the Court concludes that Plaintiffs' case must be dismissed. *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("The

---

interest, like property or money"); *contra Dept. of Ed. v. Brown*, 600 U.S. 551 (2023) (holding that individual loan borrowers lacked standing to allege the federal government unlawfully excluded them from a one-time direct benefit program purportedly designed to address harm caused by an indiscriminate global pandemic).

party seeking to invoke federal jurisdiction … bears the burden of establishing all three elements [of standing].”).

1. A declaratory judgment that CICP violates the Constitution is unlikely to redress Plaintiffs’ injuries.

The first form of relief Plaintiffs seek is a declaration from this Court that CICP violates the Fifth and Seventh Amendments as currently administered. ECF No. 36 at 55. Plaintiffs allege that CICP deprives them of their “liberty interests in redressing grievances through common-law claims against the manufacturers of the products that severely harmed them.” ECF No. 36 at 46.

Declaratory relief of this kind runs into the same problem addressed by the court in *Smith I*, which this Court finds persuasive. A declaratory judgment “binds the parties, but only the parties.” *Smith I*, 2025 WL 3124848 at *5 (citation omitted); *see Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004) (explaining that declaratory relief does not bind non-parties and cannot have preclusive effect against them in a separate tort suit). If this Court declared that CICP violates Plaintiffs’ Fifth and Seventh Amendment rights, that might settle the issue between Plaintiffs and Defendants. But it would not enable Plaintiffs to sue COVID-19 vaccine manufacturers in courts of law where they would enjoy the rights they argue the CICP process deprives them of. As non-parties to this case, vaccine manufacturers would remain free to invoke PREP Act immunity in any other case. *Smith I*, 2025 WL 3124848 at *5 (“Here, the constitutionality issues would not be settled between Plaintiffs and the vaccine manufacturers and/or administrators, which would leave the declaratory judgment powerless to remedy the alleged harm.”).

That matters. The relief Plaintiffs seek must be likely to redress their injuries. Plaintiffs claim that CICP deprives them of their “core rights” in “redressing grievances through common-law claims” against vaccine manufacturers in traditional courts. ECF No. 36 at 46. In a court at law, absent PREP Act immunity, Plaintiffs may be entitled to assert tort claims against vaccine manufacturers, have their claims tried by a jury, or seek further judicial review. But a declaratory judgment that does not

bind any vaccine manufacturers in future cases does not get Plaintiffs any closer to their goal. As a result—even after permitting Plaintiffs leave to amend their complaint—the requested declaratory judgment would not redress Plaintiffs' injury.

2. An injunction eliminating CICP is unlikely to redress Plaintiffs' injuries.

The second form of relief Plaintiffs seek is a permanent injunction prohibiting Defendants from implementing, enforcing, or administrating CICP because it violates the Fifth and Seventh Amendments. ECF No. 36 at 55. An order enjoining CICP's operation, however, would not make Plaintiffs free to "pursue their injury claims in court" against COVID-19 vaccine manufacturers. ECF No. 49 at 47. Even if CICP disappeared, the PREP Act's grant of immunity to vaccine manufacturers would remain in place. *Compare* 42 U.S.C. § 247d-6d(a) (granting immunity to the manufacturers of covered countermeasures) *with* 42 U.S.C. § 247d-6e (authorizing CICP). So too would the Secretary's declarations designating COVID-19 vaccines as covered countermeasures.

The injunction Plaintiffs request does not target either of these legal roadblocks preventing Plaintiffs from suing vaccine manufacturers.[2] Vaccine manufacturers would remain free to invoke PREP Act immunity in any future case filed against them. And even if Plaintiffs did seek to enjoin the PREP Act's grant of immunity, such an injunction would not bind non-parties to this case—namely, those same vaccine manufacturers. *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 825 (5th Cir. 2025) ("Generally, one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party[.]") (quoting *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008)) (cleaned up).

[2] As mentioned above, this Court would have no jurisdiction to review the Secretary's declarations designating COVID-19 vaccines as covered countermeasures even if Plaintiffs sought to challenge them. 42 U.S.C. § 247d-6d(b)(7).

In fact, Plaintiffs offer no convincing reason why the injunction they request would not make them *worse* off. Enjoining CICP's operation would destroy the one avenue Plaintiffs have to seek legal redress for their injuries. Absent CICP—however inadequate and unconstitutional it may be—Plaintiffs could not seek redress from anyone, anywhere. This Court believes it commonsensical that a remedy making a plaintiff's injuries worse is unlikely to make those injuries better. The requested injunction would not redress Plaintiffs' injury.

3. <u>A declaratory judgment equitably tolling statutes of limitations is unlikely to redress Plaintiffs' injuries.</u>

The last form of relief Plaintiffs seek is a declaration from this Court that the statutes of limitations for their tort claims against COVID-19 vaccine manufacturers are equitably tolled, and permitting Plaintiffs to pursue those claims in a court of competent jurisdiction. ECF No. 36 at 55. The Court doubts it has the authority to toll statutes of limitations in future cases that (1) do not exist, (2) feature different parties, and (3) would be filed before other courts—including state courts. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841–46 (2025) (explaining that the equitable power of a federal court generally extends only to the parties before the court).

Even if it did, this declaratory relief runs into the same problem addressed in *Smith I*. *See infra* Part A.1. Any declaratory judgment issued by this Court would bind only the Parties to this case. COVID-19 vaccine manufacturers would remain free to invoke PREP Act immunity in any other case Plaintiffs may file. As a result, this relief would not redress Plaintiffs' injury.[3]

[3] The Court holds that Plaintiffs' Amended Complaint fails to plead a plausible basis for standing to sue. This removes any need to address Defendants' arguments that the Amended Complaint fails to state a claim for relief. Even if the Court is wrong about Plaintiffs' standing, however, it doubts whether Plaintiffs' Amended Complaint survives dismissal under Rule 12(b)(6).

**B. Plaintiffs' remaining arguments cannot avoid dismissal.**

Plaintiffs make three remaining points on why the Court should not grant Defendants' Motion. None save this case from dismissal.

*First*, Plaintiffs note that nominal damages for the violation of constitutional rights can independently satisfy the redressability requirement. ECF No. 49 at 48; *see Uzuebunam v. Preczewski*, 592 U.S. 279, 292 (2021) ("[A] request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right."). But no request for nominal damages appears anywhere in the First Amended Complaint.

Recognizing this, Plaintiffs point to the catch-all provision in their prayer for relief, which requests "any other such relief this Court deems just and proper." ECF No. 36 at 55. The Court declines to imply remedies plaintiffs have not expressly requested for the sole purpose of saving their complaint from dismissal. On a motion to dismiss, Plaintiffs bear the burden to demonstrate standing from the face of their complaint. *Cornerstone Christian Schools*, 563 F.3d at 134; *Lujan*, 504 U.S. at 561.

*Second*, on a similar note, Plaintiffs argue that this same catch-all provision enables the Court "to craft relief in whatever manner necessary to put a stop to the ongoing constitutional violations at issue." ECF No. 61 at 3 n.2. Because the Court could fashion any final judgment it pleases, the argument goes, Plaintiffs' Amended Complaint necessarily pleads a plausible basis for redressability.

But again, Plaintiffs bear the burden at this stage to show that they have standing—including that the relief they request would likely redress their injuries. *Stringer*, 942 F.3d at 720 ("The party seeking to invoke federal jurisdiction … bears the burden of establishing all three elements [of standing]."). In determining whether Plaintiffs have met that burden, the Court has no obligation to imagine requests for relief absent from the face of the complaint. *See Malik v. United States Dep't of Homeland Sec.*, 78 F.4th 191, 199 (5th Cir. 2023) ("[W]e will not rely on conjectural or hypothetical facts to find that standing is present…"). It declines to do so here.

*Third*, Plaintiffs request leave to amend as an alternative to dismissal. ECF No. 49 at 49. District courts often afford plaintiffs an opportunity to amend their pleadings before dismissing a case. In this case, however, the Court has already given Plaintiffs leave to amend their complaint. ECF No. 35. And that leave was given after the Western District of Louisiana's decision in *Smith I* dismissing a similar lawsuit on the same grounds. *Smith I*, 2025 WL 3124848 at *4–6. Under these circumstances, the Court does not believe the deficiencies in Plaintiffs' First Amended Complaint are curable. It therefore denies Plaintiffs' second request for leave to amend. *See Fletcher v. Shulman*, No. 3:13-CV-2090-D, 2014 WL 222990 at *5 (N.D. Tex. Jan. 21, 2014), *aff'd,* 583 F. App'x 394 (5th Cir. 2014) (denying request to amend when court had already permitted amendment once before and the plaintiff's case was "similar" to a previous case dismissed on "similar grounds").

## CONCLUSION

A judgment granting Plaintiffs the relief they request would amount to an advisory opinion—a ruling on the law that, in practical effect, changes next to nothing. *See Hayburn's Case*, 2 Dall. 409, 2 U.S. 408 (1792) (explaining it violates the separation of powers for the courts to recommend to the Secretary of War what benefits should be paid to veterans if the Secretary remains free to ignore those recommendations).

That fact matters. Hearing a case beyond this Court's subject matter jurisdiction "isn't a mere technical violation, but is instead an unconstitutional usurpation of power." *Satanic Temple Inc. v. Young*, 681 F. Supp. 3d 685, 690–91 (S.D. Tex. 2023) (cleaned up) (quoting Wright & Miller, *Federal Practice and Procedure* § 3522 (3d ed.)); *see United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring) ("Relaxation of standing requirements is directly related to the expansion of judicial power. It seems to me inescapable that allowing unrestricted ... standing would significantly alter the allocation of power at the national level, with a shift away from a democratic form of

government.”). Our Constitution does not commit every grievance about the law to the inside of a courtroom.[4]

For the foregoing reasons, the Court **ORDERS** that Defendants’ Motion to Dismiss (ECF No. 47) is **GRANTED**. The above-captioned case is **DISMISSED without prejudice**.

**SO ORDERED** on this **8th day of October 2026.**

Mark T. Pittman
United States District Judge

[4] In these divisive times, perhaps the last thing our Republic needs is unelected lawyers in black robes opining on the lawfulness of statutes enacted by Congress when the plaintiffs challenging them lack standing to do so. *See, e.g.*, *Letter from Thomas Jefferson to Charles Hammond* (Aug. 18, 1821), in 15 The Writings of Thomas Jefferson 330–33 (Albert Ellery Bergh Ed.) (1905) (“It has long however been my opinion, and I have never shrunk from its expression ... that the germ of dissolution of our federal government is the constitution of the federal judiciary ... working like gravity by night and by day, gaining a little-to-day and a little tomorrow, and advancing its noiseless step like a thief, over the field of jurisdiction ... [t]o this I am opposed because ... it will render powerless the checks provided of one government on another”); Hon. James C. Ho, *Not Enough Respect for the Judiciary—Or Too Much? Arrogance and the Myth of Judicial Supremacy*, 24 Harv. J. L. Pub. Pol’y Per Curiam 6 (2026) (“There's a reason why there are jokes about God wishing that he was a federal district judge . . . [I]t's vital that district judges exercise their powers carefully and with integrity.”).